THE LAW OFFICES OF VERONICA M. AGUILAR
VERONICA M. AGUILAR, ESQ., SBN # 153288
555 SOUTH CORONA MALL
CORONA, CALIFORNIA 92879
(951) 582-9800 Telephone
(951) 346-3360 Fax

ATTORNEY FOR PLAINTIFF, WESLEY PATE

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESLEY PATE, an individual<br><br>Plaintiff<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION doing business as AMERICA'S SERVICE COMPANY;<br><br>NDEX WEST, LLC a Delaware Limited Liability Corporation;<br><br>USBANKCORP, a Delaware Corporation, doing business as US BANK NA;<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, a Delaware Corporation;<br><br>DOES 1 THROUGH 100 INCLUSIVE.<br><br>       Defendants. | Case No. CV11-04279 ODW (CWx)<br><br>Assigned for all purposes to:<br>Hon. Otis D. Wright II<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**<br><br>Date:      July 18, 2011<br>Time:     1:30 p.m.<br>Room:    11<br>Location:  312 North Spring Street<br>              Los Angeles, California 90012 |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

Plaintiff engaged the services of said Defendants to obtain a loan, and in so doing, entered in good faith, into a written contract with Defendants.

Plaintiff is an individual and while he has some understanding of the most basic financing terminology/language, had no idea whatsoever of the pitfalls of such a loan product as this was.

Agents/employees of said DOE Defendants, completed the loan application for Plaintiff, and deliberately, purposefully and with intent to deceive and without the knowledge or consent of Plaintiff, conspired, each with the other, to deceive Plaintiff and misrepresent facts and, therefore, substantially and fraudulently inflated the income of Plaintiff when the true income was available and provided to said Defendants, who then processed the loan with this false and fraudulently provided income, as part and parcel of the conspiracy failed to provide or verify Plaintiff's true income and mortgage brokerage and DOE Defendant submitted the loan for funding, using their "Stated Income" underwriting standards, which was a sham and a farce. Plaintiff's true income was never verified during their funding and underwriting process. This practice caused the demise of many a lender in the Country and probably to said Doe Defendants as well. Unknown to Plaintiff, said mortgage broker and Doe Defendant through its employees/agents, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. When a true analysis of the income versus the amount of the loan was conducted, it was discovered that Lender Defendant knew that Plaintiff would never have qualified for the loan using his true income. Therefore, Lender Defendants, in a further conspiracy each with each other, created false income, completed and had Plaintiff sign a 1003 Residential Loan application using such fraudulently fabricated income, that they later inserted onto the application, and "approved" Plaintiff for this predatory loan that actually would leave Plaintiff with negative income each month. Lender Defendants posed as conventional mortgage

lenders thus leading Plaintiff to reasonably believe that Lender Defendants had an interest in the success (repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

In fact, Lender Defendants and the Trustee on the Deed of Trust, had no financial stake (i.e. liability) in the transaction and no interest other than obtaining Plaintiff's signature on the "loan" that could never be repaid, contrary to representations and assurances from the conspiring participants in the fraudulent scheme. In addition, Plaintiff was overcharged fees incurred during the course of closing the subject loan, including but not limited to a Yield Spread Premium Fee for the first deed of trust for steering the Plaintiff into such a loan as this was. This was paid as an extra cash incentive by Doe lender Defendant to broker Doe Defendant for steering the Plaintiff into such a predatory mortgage loan product as this was. Plaintiff relied upon the due diligence of Doe Defendants, the apparent "Lenders" in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and Exchange Commission which disclose the normal manner of operating this fraudulent scheme. This is just how bad these types of loans were and they were largely responsible for the foreclosure nightmare being evidenced in California today.

Plaintiff relied upon the training and expertise of professionals who know the real estate products currently being offered by banks and other lending institutions to offer the best loans for individuals, based upon their particular circumstances.

Defendants and their agents/employees never explained to Plaintiffs the truth, that the mortgage payments could and would be more than what was represented and stated in

all of the disclosure documents.

While the terms of the loans were discussed verbally with the Plaintiff, the loan documents themselves were never explained as he was rushed into signing the final closing documents and he relied upon the assurances of Defendants that the terms set forth in the documents mirrored the verbal discussions conducted concerning the specific terms of the loans. They did not.

The language which Defendants used in the promissory note was incomprehensible, filled with legalese and filled with unintelligible language, all designed to confuse the average purchaser such as Plaintiff in order to obscure his rights and the unconscionableness of the contract. It was designed to insure that the average homeowners, such as Plaintiff, did not comprehend the true nature of the agreement and the extraordinary costs that it contained. As a result, Plaintiff relied upon the agents of Defendants and the Loan Disclosures.

Plaintiff did not even know until recently, even though apparently his loan was transferred to "WELLS", and "AMERICA'S" that the actual beneficiary of his loan was "MERS." Lender Defendants, and their agents/employees, conspired to conceal and attempted to conceal this from Plaintiff. The prepayment penalty made it physically impossible to refinance into a better loan because of the unpaid principal balance of this loan, combined with thousands of dollars of interest tacked onto his loan as a penalty for an early pay off, and due to the falling real estate values.

Doe Lender Defendants prepared and tendered to Plaintiff, along with the other loan documents it prepared and tendered, a Deed of Trust (the "Deed") in the amount of $456,000.00 for the first deed of trust, in which doe Defendant Universal Savings Bank, was listed as the lender, and the beneficiary was listed as MERS/Mortgage Electronic Registration Systems, Inc. and the trustee on said deed of trust was listed as United Title, also now defunct.

The mortgage payments due on these loans extended to Plaintiff had continued to pose a hardship. Plaintiff began attempting to again refinance or modify the loan terms to those that he thought he had originally obtained. All attempts to discuss this issue with Defendants were rejected or ignored, and they were pushing to foreclose on 03/03/2011. Plaintiff wanted to keep his home, and does not understand, since he does qualify for a loan modification, why wouldn't they consider a permanent loan restructure on this property. Plaintiff uses this non-owner occupied home as an Adult Residential care Facility, licensed by the State of California. Some of the answers "WELLS" and AMERICA'S" had given the Plaintiff for their rational in doing this and declining his permanent loan modifications is ludicrous. After receiving billions of dollars of the financial bailout money from the US Government, it would seem like they would be more interested in providing assistance on troubled loans to the homeowners, especially one like this, and where the homeowner has "clearly demonstrated capability and responsibility."

An improper, and unlawful, Notice of Default AND Notice of Trustee Sale was executed against the Plaintiff. Said Trustee sale date was executed on 02/18/2011.

Plaintiff filed his Complaint 1) Declaratory Relief; 2) Slander of Title; 3) Demand for Accounting; 4) Breach of Implied Covenant of Good Faith and Fair Dealing; 5) Violation of California Civil Code Section 1920 and 1921; 6) Violation of California Civil Code Section 1916.7; 7) Rescission/Cancellation; 8) Unfair Business Practices; 9) Breach of Fiduciary Duty; 10) Quiet Title; 11) Injunctive Relief; 12) Fraud; 13) To Void Complaint Based on Impossibility of Performance California Civil Code Section 1411, 1511, 1595 et seq; 14) To Void Complaint Based on Unconscionableness California Civil Code Section 1670.5(a); 15) Intentional Infliction of Emotional Distress; and 16) Conspiracy.

Defendants have subsequently filed a Motion to Dismiss Plaintiff's Complaint.

## II. ARGUMENT

## A. STANDARD ON A MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under this Rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson,* 749 F.2d at 534.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). But legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters to which the Court takes judicial notice. *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998); A plaintiff is not required to prove evidentiary facts and/or set forth all of the acts of the alleged /wrongoing. "A complaint is not required to allege all, or any of the facts entailed by the claim." *Bennet v. Schmidt,* 153 F.3d 516, 518.

## B. PLAINTIFF'S CLAIMS RELATING TO THE ORIGINATION OF THE SUBJECT LOAN ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendants assert that "all of Plaintiff's claims relating to the origination of the Subject Loan are barred by the respective four-year, three-year, and one-year statute of

limitations that apply". However, Defendants do not assert exactly which causes of action in Plaintiff's Complaint they are referring to. Plaintiff did not discover any wrong doings by Defendants until approximately early 2009. Therefore, he filed the subject lawsuit on March 25, 2011, which, in deed, was well within the time limits (statute of limitations) after he discovered such wrong doings by Defendants.

A statute of limitations does not begin to run until a cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.,* (2005) 35 Cal. 4th 797, 803, 806. A cause of action accrues "when the cause of action is complete with all of its elements." *Id.* at 806-07. However, when liability is premised on fraud or when the defendant is alleged to have fraudulently concealed the wrongdoing, both of which are alleged here, the claims will not accrue and the statute of limitations will not run until the fraud or cause of action is discovered. *See Pashley v. Pacific E.R. Co.,* (1944) 25 Cal. 2d 226, 229-32; see also *CCP* § 338(d). As the Supreme Court stated in Pashley:

The truth is that the plaintiff's right to relief in such cases is not dependent on technical legal definitions. In reality the ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong. The statute of limitations was intended as a shield for his protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors *and the rule is applicable in this state whether or not the action itself be based on fraud. Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant....* Otherwise, in such cases, the defendant, by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations.

The discovery rule "may be expressed by the Legislature or implied by the courts." *Norgart v. Upjohn Co.,* (1999) 21 Cal. 4th 383, 397. For example, as discussed above, the discovery rule is codified in this case because the Complaint alleges the Defendants

intentionally misrepresented their intentions and fraudulently concealed the true facts. CCP § 338(d); *See Pashley,* 25 Cal. 2d at 231-32. Courts also widely apply the discovery rule in a broad array of cases based on equitable considerations, such as where "unawareness of the injury is induced by fraud," "there is some valid excuse for the ignorance" of the claim, "there is a lack of actual and perceptible trauma," where the defendant has made an "implicit or express representation," where there has been "fraudulent concealment," and where a tort is continuing. *Warrington v. Charles Pfizer & Co.,* (1969) 274 Cal. App. 2d 564, 567-68.

Under California's discovery rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1120 (9th Cir. 1994). The discovery rule applies where the injury is difficult to detect and the defendant possesses superior information regarding the act and the injury. *See April Enters., Inc. v. KTTV,* 147 Cal. App. 3d 805, 831 (1983).

The discovery rule is an exception to the general rule that a cause of action accrues at the time when the cause of action is complete. *E-Fab, Inc. v. Accountants, Inc. Servs.,* 153 Cal.App.4th 1308, 1317-18 (2007). The rule permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. *Weatherly v. Universal Music Publ'g Group,* 125 Cal. App. 4th 913, 918-19 (2004). Under the rule, a plaintiff, prevented from discovery, should not suffer and a defendant should not "knowingly profit" from the plaintiff's ignorance. *Id.* at 919. Here, Plaintiff was not aware of Defendants' fraud and concealment until he realized he could no longer afford his mortgage payments in early 2009 due to Defendants' fraudulently fabricated income on Plaintiff's loan documents.

## C. A GENERAL ALLEGATION OF AGENCY IS SUFFICIENT IN A COMPLAINT

Defendants assert that "a beneficiary and servicer are not liable for the alleged

misconduct of the originating lender or mortgage broker where they did not exceed their roles as lender or servicer" and that "a beneficiary or loan servicer cannot be vicariously liable for the acts or omissions of the originating lender or mortgage broker without the existence of an 'agency relationship'". Here, Defendants fail to establish what causes of action they are referring to in Plaintiff's Complaint.

Contrary to Defendants' assertion, a general allegation of agency is sufficient in a complaint. *Cullinan v. Mercantile Trust Co. of California* (1 Dist. 1926) 80 Cal.App. 377, 252 P. 647. A general allegation of agency is one of ultimate fact, sufficient against a demurrer. *Kiseskev v. Carpenters' Trust for Southern California* (2nd Dist. 1983) 144 Cal.App.3d 222, 192 Cal.Rptr. 492. A complaint alleging that the defendant was agent of a codefendant is sufficient to charge the latter as principal. *General Mill & Lumber Co. v. Robertson* (1st Dist. 1932) 126 Cal.App. 118, 14 P.2d 327. An allegation of agency as such is a statement of ultimate fact. Consequently, further allegations are unnecessary. *Skopp v. Weaver* (1976) 16 Cal.3d 432, 439, 128 Cal.Rptr. 19, 24. Even in cases of fraud, general allegations of agency are sufficient. *Garton v. Title Ins. and Trust Co*. (3rd Dist. 1980) 106 Cal.App.3d 365, 165 Cal.Rptr. 449.

As stated by the Court in *Garton*: "Defendants argue that the first three causes of action [for fraud, deceit, and/or misrepresentation] are insufficient because no agency relationship existed between them and Silva. Generally, an allegation of agency is an allegation of ultimate fact and is, of itself, sufficient to avoid a demurrer. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 437, 128 Cal.Rptr. 19, 546 P.2d 307.) Plaintiffs alleged that each of the defendants were the agents and employees of each other and were acting in the course and scope of their agency, employment and authority and with the permission and consent of their codefendants in committing the acts alleged. This is a sufficient allegation of an agency relationship." *Garton v. Title Ins. and Trust Co*., supra. 106 Cal.App.3d at 376 (causes of action identified at p. 374).

Plaintiff's allegations, although stated generally, are sufficient under the notice

pleading standard of Rule 8(a). *See National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) ("on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992)). In *Commercial Fin. Services, Inc. v. Great American Ins. Co. of New York*, 381 F.Supp.2d 291 (S.D.N.Y. 2005), for example, the court upheld, against a motion to dismiss, generalized allegations of agency. The allegations on information and belief simply stated the agent "was permitted to act as [the defendant's] agent" and the agent "had actual and apparent authority to bind [the defendant]." *Id.* at 301. The court observed that it was premature to dismiss the claims at the pleadings stage because it was possible that discovery would establish an agency relationship. *Id.* at 302. The court also found that a "conclusory allegation of actual or apparent authority is sufficient under the federal pleading rules." Id. (citing *Guaranty Residential Lending, Inc. v. Int'l Mortgage Center, Inc.,* 305 F.Supp.2d 846, 861-62 (N.D.Ill. 2004) (stating that "federal pleading rules do not require that more be alleged" than generalized allegations of agency)). *See also May's Family Centers, Inc. v. Goodman's Inc.,* 571 F.Supp. 1012, 1017-18 (D. Ill. 1984) (denying motion to dismiss agency claims even as specific facts were not alleged in support because the plaintiff was "entitled to a chance to prove any set of facts that would uphold" the agency relationship).

The holding in *Garton* is clearly phrased in broad enough terms to apply to the agency relationship alleged in Plaintiff's Complaint.

### D.  PLAINTIFF ASKS FOR LEAVE TO AMEND HIS  FIRST AND TENTH CAUSES OF ACTION

Defendants assert that "under California law, Plaintiff is required to make a valid tender offer of the full amount due under the Subject Loan".  This is not accurate.

Tender of the full outstanding debt is not required as observed by a recent case analyzing the tender requirement: "The Court is unaware of any case holding there is a bright-line rule requiring tender of the unpaid debt to set aside a sale..." and, tender is a

"matter of discretion left up to the Court." *Storm v. America's Servicing Company* (S.D.Cal. 2009) 2009 WL 3756629 at 6. Moreover, even if tender were expressly required anywhere, there is no requirement that successful tender be plead because, "at the procedural stage the Court only decides whether Plaintiffs have pleaded 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (citing *Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 544, 570). This view is not a recent anomaly: "[I]t is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." *Humboldt Sav. Bank v. McCleverty,(1911)* 161 Cal. 285, 291; *see also, Onofrio v. Rice,* (1997) 55 Cal.App.4th 413, 424. In this case, Plaintiff disputes the sale on grounds beyond mere irregularities and contends the sale is void based on his challenge of the very right of Defendants to conduct the sale to begin with.

Failure to allege the ability to tender at the early pleadings stage is not fatal to a quiet title action. *Karlsen v. Am. Sav. & Loan Ass'n* (1971) 15 Cal.App.3d 112 (distinguished by *ING Bank v. Ahn* (2009) 2009 WL 2083965, 2). Moreover, the tender rule only applies to the undisputed amount of the loan, *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446, not the amount of the loan.

///

Even if it can be determined that Defendants have some viable claim to title, requiring full tender to challenge the legality of the sale would necessarily chill such challenges making equity available to a very limited class of similarly situated claimants. Requiring tender in cases such as this sends a clear signal to creditors that "accidentally" proceeding with a sale prematurely will have no adverse consequences to them because of the tender requirement, which raises an insurmountable bar for most aggrieved homeowners. While it is a favorite refrain of creditors' attorneys that "he who seeks equity must do equity," it is also true that the law never requires impossibilities." *Civ. Code § 3531.*

The process of tender is an equitable one, which is in the discretion of the Court. *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1173 (2003). Courts in the past have allowed plaintiffs the opportunity to plead that they have the ability to refinance the loan and use the proceeds to satisfy their tender obligations. *Williams,* 2008 U.S. Dist. 131, 21. Other courts have allowed plaintiffs to make monthly payments to pay off the remainder of the debt. *In re Sterten,* 352 B.R. 380, 388; *Shepeard v. Quality Siding & Window Factory,* 730 F. Supp. 1295, 1308 (D.Del. 1990). Because discretion in this matter is so extensive, this Court could also formulate another form of tender arrangement that has not yet been examined.

At this juncture, there is no evidence that Plaintiff would be unable to meet the requirements of a modified tender procedure and the determination of Plaintiff's ability to perform is an inquiry that is best left to the discovery process to unveil. *Williams,* 208 U.S. Dist. 131, 20-21.

In addition, Defendants assert that "Plaintiff's allegations that the Subject Note and Subject Deed of Trust are invalid and that the right to foreclose on the Subject Property requires possession of the Subject Note are without merit" and that "California law does not require possession of the original note in order to exercise the power of sale pursuant to a deed of trust".

Defendants have attached an Assignment of Deed of Trust and Substitution of Trustee to their Request for Judicial Notice. Plaintiff will take these documents into consideration and would ask the Court for leave to amend his cause of action for Declaratory Relief and Quiet Title.

## E. PLAINTIFF WILL REMOVE HIS SECOND CAUSE OF ACTION FOR SLANDER OF TITLE IF GRANTED LEAVE TO AMEND HIS COMPLAINT

Defendants assert that Plaintiff cannot sustain a claim for slander of title. Plaintiff asks for leave to amend his Complaint and if granted, will remove this cause of action.

## F. PLAINTIFF'S THIRD CAUSE OF ACTION FOR ACCOUNTING IS APPROPRIATE

Defendants assert that "Plaintiff has no right to demand accounting to the indebted party".

In *Braden v. Lewis*, (1953) 119 Cal. App. 2d 84, it states "If plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done." 119 Cal. App. 2d at 88. The true amount of money, if any, owed to Defendants by Plaintiff are unknown as Defendants allege different figures for the payoff of the loans than Plaintiff contends is owed. Any such monies "owed" are relevant to the litigation of this case.

Thus, Defendants' Motion to Dismiss Plaintiff's Third Cause of Action must be denied.

## G. PLAINTIFF'S FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH, THIRTEENTH AND FOURTEENTH CAUSES OF ACTION ARE APPROPRIATE

**i.** <u>Defendants contend that these causes of action are time-barred by the Statute of Limitations and that the that the Truth in Lending Act preempts Plaintiff's claims that the terms of the subject loan were not disclosed as required by law</u>

A statute of limitations does not begin to run until a cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.*, (2005) 35 Cal. 4th 797, 803, 806. A cause of action accrues "when the cause of action is complete with all of its elements." *Id.* at 806-07. However, when liability is premised on fraud or when the defendant is alleged to have fraudulently concealed the wrongdoing, both of which are alleged here, the claims will not accrue and the statute of limitations will not run until the fraud or cause of action is discovered. *See Pashley v. Pacific E.R. Co.*, (1944) 25 Cal. 2d 226, 229-32; see also *CCP* § 338(d). As the Supreme Court stated in Pashley:

The truth is that the plaintiff's right to relief in such cases is not dependent on technical legal definitions. In reality the ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff

from bringing an action within the statutory period, is estopped from taking advantage of his own wrong. The statute of limitations was intended as a shield for his protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors *and the rule is applicable in this state whether or not the action itself be based on fraud. Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant....* Otherwise, in such cases, the defendant, by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations.

The discovery rule "may be expressed by the Legislature or implied by the courts." *Norgart v. Upjohn Co.*, (1999) 21 Cal. 4th 383, 397. For example, as discussed above, the discovery rule is codified in this case because the Complaint alleges the Defendants intentionally misrepresented their intentions and fraudulently concealed the true facts. CCP § 338(d); *See Pashley*, 25 Cal. 2d at 231-32. Courts also widely apply the discovery rule in a broad array of cases based on equitable considerations, such as where "unawareness of the injury is induced by fraud," "there is some valid excuse for the ignorance" of the claim, "there is a lack of actual and perceptible trauma," where the defendant has made an "implicit or express representation," where there has been "fraudulent concealment," and where a tort is continuing. *Warrington v. Charles Pfizer & Co.*, (1969) 274 Cal. App. 2d 564, 567-68.

Under California's discovery rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994). The discovery rule applies where the injury is difficult to detect and the defendant possesses superior information regarding the act and the injury. *See April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 831 (1983).

The discovery rule is an exception to the general rule that a cause of action accrues at the time when the cause of action is complete. *E-Fab, Inc. v. Accountants, Inc. Servs.*,

153 Cal.App.4th 1308, 1317-18 (2007).  The rule permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. *Weatherly v. Universal Music Publ'g Group,* 125 Cal. App. 4th 913, 918-19 (2004).  Under the rule, a plaintiff, prevented from discovery, should not suffer and a defendant should not "knowingly profit" from the plaintiff's ignorance. *Id.* at 919.  Here, Plaintiff was not aware of Defendants' fraud and concealment until he realized he could no longer afford his mortgage payments in early 2009 due to Defendants' fraudulently fabricated income on Plaintiff's loan documents.  Therefore, he filed the subject lawsuit on March 25, 2011, which, in deed, was well within the time limits (statute of limitations) after he discovered such wrong doings by Defendants.

Whether a state law is preempted by Federal law begins with two traditional presumptions. First, courts begin with the assumption that the historic police powers of the States are not superseded unless Congress' purpose and manifest intent to do so are clear. *See Gibson v. World Savings And Loan Ass'n,* (2002) 103 Cal. App. 4th 1291, 1300 (citing *Cipollone v. Liggett Group, Inc.,* (1992) 505 U.S. 504, 516). The historic police powers of the state include "the regulation of consumer protection in general and of the banking and insurance industries in particular." *Gibson,* 103 Cal. App. 4th at 1300 (citing *Smiley v. Citibank,* (1995) 11 Cal. 4th 138, 148). Second, where Congress has enacted legislation including a provision expressly addressing the issue of preemption, "there is no need to infer congressional intent." *Id.* "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* Moreover, "Regardless of whether the alleged presumption arises by statute or regulation, courts are reluctant to infer preemption in ambiguous cases." *Black v. Financial Freedom Senior Funding Corp.,* (2001) 92 Cal. App. 4th 917, 926. It is the burden of the party claiming preemption to prove it. *See Wells Fargo Bank v. Superior Court,* (1991) 53 Cal. 3d 1082, 1109.

In *Cipollone,* 505 U.S. 504, the United States Supreme Court set forth the method

for determining the scope of federal preemption, which has been applied by the California Supreme Court, and most recently, in the context of the OTS regulations by the Fourth District. *See Gibson,* 103 Cal. App. 4th at 1301. To determine whether a state law is preempted, courts must "fairly, but - in light of the strong presumption against preemption - narrowly construe the precise language of [the preemptive statute or regulation] and ... look to each of [the plaintiffs' state] law claims to determine whether it is in fact preempted." *Id.* (citing *Mangini v. R.J. Reynolds Tobacco Co.,* (1994) 7 Cal. 4th 1057, 1067 (quoting *Cipollone,* 505 U.S. at 523-24).) "As to each state law claim, the central inquiry is whether the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly preempts." *Gibson,* 103 Cal. App. 4th at 1301.

### ii. <u>Defendants assert that the true terms of the Subject Loan were Accurately disclosed to Plaintiff in writing</u>

While Defendants assert that disclosure documents were accurately represented and disclosed to Plaintiff, Plaintiff was not aware that Defendants' had inflated his income and approved him for a loan in which he would not be able to eventually afford. This was not disclosed to Plaintiff in any kind of "disclosure" document

///

Which Defendants will represent they provided to Plaintiff. Any type of disclosure document provided to Plaintiff was inaccurate.

Thus, Defendants' Motion to Dismiss Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Thirteenth and Fourteenth Causes of Action must be denied.

### H. PLAINTIFF'S NINTH CAUSE OF ACTION IS APPROPRIATE

Defendants assert that a "financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money". This is not true.

Fiduciary liability *does* arise when a lender chooses to do more than simply lend

money. *Kim v. Sumitomo Bank California,* 17 Cal.App. 4th 974, 979-981 (1993)(lender owes borrower no fiduciary duty unless borrower can demonstrate a "special relationship or circumstances" that would give the lender/borrower relationship a fiduciary character); *Peterson Development Co. v. Torrey Pines Bank,* 377 Cal.App.3d 103. 119 (1991)(under special circumstances bank may undertake obligations which create fiduciary liability); and *Neiderreuther v. Schifter,* 1998 WL 409876, *1 (N.D.Cal. 1998)("[a] fiduciary duty only arises if the bank or lender takes on a 'special relationship' with the borrower").

As one commentator succinctly stated: "...[a] common fact pattern in lender liability cases is when the lender exerts excessive control over the borrower, giving rise to fiduciary duties. Here one can see the evolution of the new fiduciary principle, the traditional rule that the controlling entity of a corporation owes fiduciary duties to the corporation and its shareholders has been expanded to apply to lenders who have so much leverage over the borrower that they effectively control the borrower." Eileen A. Scallen, *Broken Promises v. Promises Betrayed: Metaphor, Analogy and the New Fiduciary Principle,* 1993 U. Ill. L. Rev. 897, 953 (1993).

In addition, Defendants assert that WELLS FARGO, U.S. BANK, and MERS owe no duty to Plaintiff.

Under California law, successor liability may be imposed on a corporation for the debts and liabilities of its predecessor in any of the following circumstances: (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts. *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28, 136 Cal.Rptr. 574; *Westoil Terminals Co. V. Harbor Ins. Co.* (1999) 73 Cal.App.4th 634, 638; *Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 620, 105 Cal.Rptr.2d 11.

"It is the general rule that a corporation formed by consolidation or merger is answerable for all the debts and liabilities of the constituent corporations, whether they

17

arise ex contractu or ex delicto." *Moe v. Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289, 304. Once the merged entity holds the liabilities of its predecessor, it is axiomatic that it cannot extinguish through contracts with one party debts or obligations it owes to a third party who is a stranger to the contract.

The act of merging establishes a basis of successor liability. *Petrini v. Mohasco Corp.* (1998) 61 Cal.App.4th 1091, 1094. This is true regardless of whether a business or other asset acquired through the merger had assets--the "surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute" regardless of whether those liabilities are known or unknown at the time of the merger. *Id.* at 1097 & 1098-1099.

Other agreements between merging entities, subsidiaries, etc., that contractually assign rights or responsibilities from one corporation to another do not relieve the transferor of its obligations *to third parties who are not a party to those contracts* from the obligations that the transferor incurs, regardless of when or how the obligation arises. Successor liability through merger arises by operation of law, and obligations to unrelated third parties incurred by predecessor entities are not extinguished through assignment or assumption contracts between two parties.

///

It is acknowledged, that in the State of California, the issue of successor-in-interest liability is "extremely fact sensitive." *See* e.g., William P. O'Neill, *Advanced Issues In Strategic Alliances,*1193 PLI/Corp. 351, 391 (July 2000) [discussing the joint venture's liability for Venturer A's obligations prior to the joint venture's acquisition of Venturer A's business].

It has been held that a successor in interest is, generally, a person or entity who comes into possession of the rights of another in a particular tangible or intangible property. As stated in *Perez v. 222 Sutter St. Partners,* 222 Cal.App.3d 938 (1990), "'[s]uccessor in interest' is defined as: '[o]ne who follows another in ownership or control of property. In order to be a 'successor in interest,' a party must continue to retain

the *same rights* as original owner ... and there must be *change in form only and not in substance ....' " Perez,* at p. 948, fn. 8, *quoting* Black's Law Dict. (5th ed. 1979) p. 1283, col. 2; *see also Estate of Yates,* 25 Cal.App.4th 511, 522 (1994); *Marks v. Minnesota Mining & Manufacturing Co.,* 187 Cal.App.3d 1429, 1435 (1986) [successor liability found based on de facto merger]; *Moe v. Transamerica Title Ins. Co.,* 21 Cal.App.3d 289 (1971) ["It is the general rule that a corporation formed by consolidation or merger is answerable for the debts and liabilities of the constituent corporations, whether they arise *ex contractu* or *ex delicto"].* The surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute. No authority has been cited, or found, indicating that such liabilities would be limited only to known ones, nor that the prior entity must be - by definition - a "corporation," as opposed to any other cognizable legal entity. *Petrini v. Mohasco Corp.,* 61 Cal.App.4th 1091, 1098-99 (1998).

Plaintiff asks that the Court grant him leave to amend his Complaint in order to place this cause of action against "All Lender Defendants and DOES 1 THROUGH 100 INCLUSIVE" only.

## I. PLAINTIFF'S ELEVENTH CAUSE OF ACTION IS APPROPRIATE

Defendants assert that "because Plaintiff cannot establish any likelihood of prevailing on the merits, Plaintiff is not entitled to any Preliminary Injunction". This is ludicrous.

Plaintiff has demonstrated a reasonable probability of success on the merits. The law does not require that Plaintiff demonstrate absolute success on the merits to prevail on a motion for preliminary injunction. "In awarding a preliminary injunction, the court does not anticipate the ultimate determination of the rights involved, but merely that a sufficient case has been made out to warrant the preservation of the property or rights in status quo until the final hearing." *System 99 v. System 101*, 35 Cal. App. 3d 170, 174 (1973).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER

Many California cases have recognized the existence of a cause of action for injunctive relief. *See e.g., Bates v. Franchise Tax Bd.*, (2004) 124 Cal.App.4th 367, 379-380 and 386-387 (plaintiff stated viable cause of action for injunctive relief); *Sappington v. Orange Unified School Dist.*, (2004) 119 Cal.App.4th 949, 951 (appeal of judgment rendered in bench trial of causes of action for declaratory and injunctive relief); *House of Prayer v. Evangelical Assn. of India*, (2003) 113 Cal.App.4th 48 ("trial court ruled in the plaintiffs' favor on the injunctive relief and specific performance causes of action"); *Nwosu v. Uba*, (2004) 122 Cal.App.4th 1230, 1235. ("court noted that the fifth cause of action for injunctive relief had been decided previously by two other judges"); *Art Movers, Inc. v. Ni West, Inc.*, (1992) 3 Cal.App.4th 640, 644-645 (appeal of summary adjudication order relating to cause of action for injunctive relief).

Plaintiff will suffer severe and irreparable injury if the transfer of title is not enjoined. Plaintiff may be turned out of his home before the Court may rule on the merits of Plaintiff's claim. That is why, "given the drastic implications of a foreclosure, it is not surprising to find courts quite frequently granting preliminary injunctions to forestall this remedy while the court considers a case testing whether it is justified under the facts and law. [cit.om.]". *Baypoint Mortgage Corp.*, 168 Cal.App.3d at 818, 824, 825.

Thus, Defendants' Motion to Dismiss Plaintiff's Eleventh Cause of Action must be denied.

## J. PLAINTIFF'S TWELFTH CAUSE OF ACTION IS APPROPRIATE

Defendants assert that Plaintiff's fraud claim is time barred. This is not accurate.

A statute of limitations does not begin to run until a cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.*, (2005) 35 Cal. 4th 797, 803, 806 . A cause of action accrues "when the cause of action is complete with all of its elements." *Id.* at 806-07. However, when liability is premised on fraud or when the defendant is alleged to have fraudulently concealed the wrongdoing, both of which are alleged here, the claims will not accrue and the statute of limitations will not run until the fraud or cause of action is discovered. *See Pashley v. Pacific E.R. Co.*, (1944) 25 Cal. 2d 226, 229-32; *see also CCP § 338(d).* As

the Supreme Court stated in Pashley:

"The truth is that the plaintiff's right to relief in such cases is not dependent on technical legal definitions. In reality the ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong. The statute of limitations was intended as a shield for his protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors *and the rule is applicable in this state whether or not the action itself be based on fraud. Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant....* Otherwise, in such cases, the defendant, by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations."

The discovery rule "may be expressed by the Legislature or implied by the courts." *Norgart v. Upjohn Co.,* (1999) 21 Cal. 4th 383, 397. For example, as discussed above, the discovery rule is codified in this case because the Complaint alleges the Defendants intentionally misrepresented their intentions and fraudulently concealed the true facts. CCP § 338(d); *See Pashley,* 25 Cal. 2d at 231-32. Courts also widely apply the discovery rule in a broad array of cases based on equitable considerations, such as where "unawareness of the injury is induced by fraud," "there is some valid excuse for the ignorance" of the claim, "there is a lack of actual and perceptible trauma," where the defendant has made an "implicit or express representation," where there has been "fraudulent concealment," and where a tort is continuing. *Warrington v. Charles Pfizer & Co.,* (1969) 274 Cal. App. 2d 564, 567-68. In this case, Plaintiff has alleged an adequate basis for application of the discovery rule to his claims, since they allege fraud, that he was unaware of the misrepresentation and was induced by Defendants' fraudulent conduct, and had no reasonable means of knowing the true facts.

Under California's discovery rule, "the statute of limitations begins to run when the

plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994). The discovery rule applies where the injury is difficult to detect and the defendant possesses superior information regarding the act and the injury. *See April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 831 (1983).

The discovery rule is an exception to the general rule that a cause of action accrues at the time when the cause of action is complete. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1317-18 (2007). The rule permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. *Weatherly v. Universal Music Publ'g Group,* 125 Cal. App. 4th 913, 918-19 (2004). Under the rule, a plaintiff, prevented from discovery, should not suffer and a defendant should not "knowingly profit" from the plaintiff's ignorance. *Id.* at 919. Here, Plaintiff was not aware of Defendants' fraud and concealment until he realized he could no longer afford his mortgage payments in early 2009 due to Defendants' fraudulently fabricated income on Plaintiff's loan documents.

In addition, Defendants assert that "no false representation is present here".

In *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3d 19, the court discusses the purpose of a Complaint in a civil action as framing and limiting the issues and to apprise the defendants of the basis upon which the plaintiff is seeking recovery. Just as in the Complaint in *Children's T.V.,* the Complaint in the case at bar alleges that Defendants had engaged in a fraudulent scheme to mislead Plaintiff by making misrepresentations regarding her loan. Further, *Children's T.V.* states that it is not the ordinary function of a demurrer to test the truth of the Plaintiff's allegations or the accuracy with which he describes Defendant's conduct. A demurrer tests only the legal sufficiency of the pleading. It admits the truth of all material factual allegations in the Complaint. The Court also observes that less specificity is required in pleading fraud when it appears from the nature of the allegations that the Defendants must necessarily

possess full information concerning the facts of the controversy which is apparent that Defendants do.

Plaintiff states sufficient facts in his Complaint as to why Defendants have committed fraud. Therefore, Defendants' Motion to Dismiss Plaintiff's Twelfth Cause of Action must be denied.

## K. PLAINTIFF'S FIFTEENTH CAUSE OF ACTION IS APPROPRIATE

Defendants assert that Plaintiff cannot show that Defendants committed any extreme and outrageous conduct.

This is not accurate. Plaintiff states in his Complaint that "Defendants, and each of them, knowingly, intentionally, purposefully, and without any regard for the consequences which would befall Plaintiff, committed these acts with reckless disregard of the probability of causing Plaintiff to suffer emotional distress.    The acts of Defendants as herein above described, and each of them, have resulted in Plaintiff suffering severe anxiety, nervousness, depression, fear, insecurity and extreme emotional distress.  The outrageous conduct of Defendants as herein above described, and each of them, which was, in by no stretch of the imagination privileged, is the actual and proximate cause of the severe emotional and other duress suffered by the Plaintiff. Plaintiff relied on the expertise and training of Defendants to guide them in the extremely important decision of the financing and purchase of his home.  The Plaintiff revealed confidential financial information to these licensed professionals and relied upon their judgment as trained professionals.  In exchange for this trust and reliance, Plaintiff was deceived, lied to, victimized by theft, deliberately subjected to a situation wherein Plaintiff would be forced to incur additional fees and expenses in order to overcome, were targeted for predatory loan tactics, taken advantage of, and now being faced with losing his home, have all caused Plaintiff extreme emotional distress.  Despite legislation enacted by the State of California to the contrary, Defendants, and each of them, refused to discuss loan modification in order to cure the default status of the subject property, and

in fact made it impossible to determine who it was they were required to contact in order to cure the defaulted status of the loan, by having parties unknown to Plaintiff send notices threatening foreclosure for the sole and express purpose of confusing Plaintiff and adding to his emotional distress."

It is unknown how anyone would not suffer severe emotional distress under these life changing circumstances. Thus, Defendants' Motion to Dismiss Plaintiff's Fifteenth Cause of Action must be denied.

## L. PLAINTIFF'S SIXTEENTH CAUSE OF ACTION IS APPROPRIATE

Defendants assert that Plaintiff cannot establish that a conspiracy was formed. Plaintiff will reiterate his Complaint which states "During the period of 2006 to the present, Defendants, and unknown DOE Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to conceal from Plaintiff the true nature of the loan. They misrepresented and concealed the current mortgage payments which were to be paid after computing the fully amortized amount. They concealed the fact that a large portion of the fees paid at the close of escrow were for no other reason but to profit the Defendants tied up in a Yield Spread Premium program for steering plaintiff into a higher than industry normal interest rate and predatory loan products as this loan was. They concealed the fact that Plaintiff was actually qualified for better rate mortgage. They concealed the fact that they had fraudulently inflated his income on the loan application. They concealed from the Plaintiff the fact that the loan could never be paid off by their terms by the payments as set forth in the Disclosures. They concealed the true nature of the rising interest rates, and Plaintiff was faced with loan payments that would grow to a point that would ultimately lead to a default. Defendants, and each of them, concealed each and every month the nature and extent of the additional payments and costs incurred by Plaintiff, in addition to a principal unpaid balance that never budged with every payment paid. Each and every Defendant did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and the above-alleged

agreement to secure these additional payments and money from Plaintiff and conceal its nature from Plaintiff. Defendants, each one of them, furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of the other Defendants. Plaintiff is informed and believes and thereon alleges that the overt acts in pursuance of the above-described conspiracy occurred and are occurring by each Defendants' continued actions, including the non-judicial foreclosure, and its consequential costs to Plaintiff. Plaintiff has incurred substantial legal costs to protect his legal rights."

Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 C.4th 503, 510 28 CR2d 475, 478. As explained by the California Supreme Court:

> "The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered ... A civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage".

*Unruh v. Truck Ins. Exch.* (1972) 7 C.3d 616, 631, 102 CR 815, 826.

"A cause of action for conspiracy will lie against agents and employees of insurers ... when they join the insurer in a conspiracy to defraud the insured. As such they are jointly liable with those with whom they conspire to commit the tort." *Younan v. Equifax. Inc.* (1980) 111 CA3d 498, 511, 169 CR 478, 486; and, *Doctors' Co. v. Superior Court* (1989) 49 C.3d 39, 46-48, 260 CR 183, 188.

Plaintiff has adequately pleaded a cause of action for Conspiracy. Thus, Defendants' Motion to Dismiss Plaintiff's Sixteenth Cause of Action must be denied.

## M. IN THE EVENT THE COURT FINDS ANY OF PLAINTIFF'S ALLEGATIONS LACKING, PLAINTIFF HEREBY REQUESTS LEAVE TO AMEND HIS COMPLAINT

Federal Rules of Civil Procedure Rule 15 (a) expressly states that leave to amend

"shall be freely given when justice so requires." See also *Allen v. City of Beverly Hills* 911 F.2d 367, 373. "Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991).

Therefore, should the Court find any of Plaintiff's allegations lacking, Plaintiff herby respectfully requests leave to amend the allegations contained therein.

### III. CONCLUSION

It is respectfully requested that the Court deny Defendants' Motion to Dismiss Plaintiff's Complaint for all of the foregoing reasons. Should the Court grant the Motion or any portion thereof, Plaintiff respectfully requests that this Court grant leave to amend.

DATED this 12th day of July, 2011

By: /s/ Veronica M. Aguilar, Esq.
VERONICA M. AGUILAR, ESQ.
Attorney for Plaintiff